In the Matter of the Application of FRED RAMSAY, Appellant, for a Certiorari Order against TOWN BOARD OF THE TOWN OF HEMPSTEAD, NASSAU COUNTY, NEW YORK, and WALTER R. JONES and Others, Constituting Said Board, and Another, Respondents, with Reference to the Establishment of UNIONDALE WATER DISTRICT.

Second Department, April 20, 1934.

*Milton Pinkus,* for the appellant.

*Kenneth M. Spence* [*George Rosier* with him on the brief], for the respondents.

DAVIS, J. Certain residents of the town of Hempstead, Nassau county, are attempting to establish a water district in a portion of that town, which is said to involve a proposed expense of $300,000. Naturally, in these times, there is objection on the part of some persons to such an enterprise involving a heavy burden of bonded indebtedness upon a limited number of inhabitants and their property; and the petitioner is one contending against it.

He presented his petition to the court on an order to show cause asking for a certiorari order directing the town board to certify and return the proceedings. He was met with opposition on the part of the board, and the order made denied his petition in respect to a certain order made December 29, 1932, and granted it in respect to a subsequent order.

The right to establish such water district and the procedure to be adopted in connection therewith are provided in sections 282 and 285 of the Town Law of 1909, as amended. In brief, the town board in any town of the counties of Nassau and Westchester may act on a petition of a majority of the owners of taxable property in a proposed district as appears by the last preceding completed assessment roll, or upon the petition of owners of real property in such proposed district representing more than one-half in value of the taxable real property therein. Under such circumstances the town board may establish a water district outside of an incorporated city or village and wholly within such town. The petition must describe the proposed district and the maximum amount proposed to be expended for the construction of the water system, and must be signed by the petitioners and acknowledged in the same manner as a deed to be recorded. Maps and plans are to be filed in the town clerk's office whereupon the town clerk is to give notice of the filing by publication; and the petition shall not be granted unless a public hearing is had upon notice to all persons owning taxable property. " Upon such hearing the town board shall first determine if said petition is in fact signed and acknowledged or proved in the same manner as a deed to be recorded." If the town board determines that the petition is properly signed and proved or acknowledged, then " they shall make a written order to that effect, which order shall be signed by the members of the town board present at such hearing and also entered in the minutes of said meeting." While the language of the statute is somewhat obscure, it is apparent that the order is to be made after the board has publicly heard the facts and arguments presented by all interested persons attending upon the hearing. After the order is made, the town board fixes a time and a place for the election of water commissioners, with notice given as for a special town meeting.

A petition purporting to be signed by 444 owners of taxable real property was filed with the town clerk December 6, 1932. Evidently, notice of a hearing was given for December twenty-ninth. At this hearing there were objectors represented by counsel who challenged the fact that a majority of owners of taxable property had signed the petition, and pointed out that in many instances the petition was not signed and acknowledged as the statute required; and raised questions as to which assessment roll should be considered in determining the fact. This hearing was continued on January 3, 1933, with further objections and arguments. It is said in an opposing affidavit: " That the said public hearing was adjourned, and on January 3, 1933, the Town Board again gave

opportunity to all persons concerned to present facts and arguments which might be helpful to the Board in reaching its determination." This second hearing, where the town board sat solemnly in judgment and listened to arguments, was somewhat farcical in its nature, for the board had made and entered in its minutes on December twenty-ninth an order to the effect that the petition filed December sixth " is in fact signed and acknowledged or proved in the same manner as a deed to be recorded, and in all respects complies with the provisions of Section 282 of the Town Law as amended," and directed that the determination and order should be entered on the minutes of the hearing. This was dated December 29, 1932, and signed by certain members of the town board.

We find no allegation in the papers that the order was ever filed or that the minutes were filed with the town clerk, but that fact seemed to be conceded on the argument. However, the objectors had no knowledge of the filing, and there is no statutory provision requiring that any particular notice be given to them. Very likely they were at liberty to visit the town clerk's office at intervals and discover, if they could, the minutes of the meeting containing the order.

In the petition for certiorari it is alleged, as upon the hearing, that the petition of the owners did not comply with the statute in that it was not signed by the proper number of persons, and that the signatures were not proved in the manner required for the recording of a deed — there being no proof as to the total number of owners of real property or the value of their taxable property, or as to the total number of resident owners of taxable property in the proposed water district. Attention is called therein to the fact that on the face of the petition in numerous instances the signatures of husband and wife are obviously written in one hand; and that there was no proof before the town board as to whether the assessment roll of 1932 or 1933 was to be used as a basis of computation.

Following the making of the order of December 29, 1932, the town board, after considerable delay, made another order on May 23, 1933, determining that it was in the public interest to grant the relief sought by the petition, making other necessary provisions and fixing the date of the election of water commissioners for June fourteenth. Evidently the town board overlooked a statute (Laws of 1933, chap. 683) which became effective May 2, 1933, suspending for two years the operation of the law authorizing the creation of a water district by the town board and permitting such creation only upon proof being submitted to the State Comptroller that such special district is desirable, and upon a finding by the

Comptroller that the public interest will be served and that the cost will not be an undue burden upon the property within such proposed district.

After learning of this statute the town board undertook to comply therewith and obtained the necessary order from the Comptroller on June 28, 1933. On July third, thereafter, the board met and again ordered and determined that the district be created in substantially the same language as in the prior order, except that the election was fixed to be held August 2, 1933. When the petition for a certiorari order was presented and the order to show cause obtained on June 28, 1933, more than four months had elapsed since the making of the first order and determination of December 29, 1932. The sole question presented here is whether the petitioner is barred from reviewing by certiorari the order of December 29, 1932.

There is no controlling authority on the precise question and we must proceed to its determination through the process of reason and analogy. Section 1286 of the Civil Practice Act provides that a certiorari order cannot be granted, " 1. To review a determination which does not finally determine the rights of the parties with respect to the matter to be reviewed." The provisions of section 1288 of the Civil Practice Act are: " Subject to the provisions of the next section, a certiorari order to review a determination must be granted and served within four calendar months after the determination to be reviewed becomes *final and binding*, upon the petitioner * * * either in law or in fact." The next section (1289) relates only to those who are disabled in some manner from commencing the proceeding by reason of infancy, insanity or imprisonment.

The question presented, then, is whether the order of December 29, 1932, finally determined the rights of the parties in respect to the matter to be reviewed or became " final and binding, upon the petitioner."

As we view it, the first order merely determined whether the petition was sufficient to give the board authority to act at all. It was a preliminary question dealing entirely with the sufficiency of the petition and fixing no one's ultimate rights. It was merely the first step toward a determination that would affect all the taxpayers in the proposed district. It neither determined the rights of the parties with respect to the matter to be reviewed nor became final and binding upon any one except as it might establish jurisdiction in the town board. It is doubtful if it could have been reviewed by certiorari as affecting any substantial right. Nobody was particularly aggrieved at that stage of the proceeding. The

town board might in its discretion determine that in these times it was not in the public interest to establish such a district. Some discretion seems vested in the board, although the language of section 285 of the Town Law seems to be positive in its requirements that the board must make the order. (See General District Law [Laws of 1926, chap. 470], §§ 3, 4; *Matter of Floyd-Jones* v. *Town Board,* 249 N. Y. 398, 402.)

Clearly, the final order, being a judicial act, may be reviewed. (*Matter of Syracuse, B. & N. Y. R. R. Co.* v. *Van Amburgh,* 223 App. Div. 485, 490; affd. on opinion below, 251 N. Y. 548.) To obtain a complete remedy, the petitioner should be permitted to review the first order in which the board determined that it had jurisdiction to act. That question is vital, and the petitioner and those objecting are likely to be much impeded in their remedy and their efforts rendered futile unless this fundamental question of jurisdiction can be determined. The first order cannot be attacked collaterally, and if the preliminary question of jurisdiction is not determined by certiorari, it cannot be reached at all. (*Eastman Kodak Co.* v. *Richards,* 123 Misc. 83.)

In *People ex rel. Pennsylvania Gas Co.* v. *P. S. Comm.* (181 App. Div. 147), where a question somewhat similar in principle was presented, the court said (p. 148): " While the rules of the Commission seem to provide for a demurrer, the same question might be raised by motion or in any other appropriate manner during the pendency of the hearing before the Commission. Its ruling in respect to this question stands on no different basis from its ruling in respect to other questions which arise at the hearing. *Until the Commission makes a determination which finally determines the rights of the parties the relator has not sustained any grievance.* The order in question overruling its demurrer does not injure or aggrieve the relator until it is followed by some other determination or ruling affecting the price which it seeks to charge for its product, and such a determination may never be made."

The review of the preliminary order partakes somewhat of the character of an appeal. In section 580 of the Civil Practice Act it is provided: " An appeal taken from a final judgment or from a final order in a special proceeding brings up for review an interlocutory judgment or an intermediate order, as the case may be, which is specified in the notice of appeal and necessarily affects the final judgment or order; and which has not already been reviewed, upon a separate appeal therefrom, by the court or the division or term of the court to which the appeal from the final judgment or order is taken. * * * The right to review an interlocutory judgment of an intermediate or other order, as prescribed in this

section, is not affected by the expiration of the time within which a separate appeal therefrom might have been taken."

By analogy, the review of the final order made by the board should properly bring up the preliminary order by which its jurisdiction to make the final order is obtained. In view of the circumstances and the dilatory conduct on the part of the board before making its final order, we think the right should be given to the petitioner to review the preliminary order, to the end that the question may be fully determined before the expense of a special election is incurred and the ultimate obligation imposed on the taxpayers of the proposed district.

Therefore, the order should be modified by striking from the first ordering paragraph in relation to the order of December 29, 1932, the word " denied," and by inserting in lieu thereof the word " granted; " and by striking from the second ordering paragraph the word " subsequent " where it first appears and inserting in lieu thereof the word " prior," and by adding after the words " the 29th day of December, 1932," where they first appear, the words " and your proceedings thereon at and following that date; " and by inserting before the word " subsequent " where it secondly appears the words " prior to and." As so modified the order should be affirmed, without costs.

Present — LAZANSKY, P. J., YOUNG, KAPPER, HAGARTY and DAVIS, JJ.

Order modified in accordance with opinion, and as so modified unanimously affirmed, without costs. Settle order on notice.