Saul S. Stkeit, J.
This is a proceeding, pursuant to article 78 of the Civil Practice Act, brought by Ray Robinson, popularly known as ‘ ‘ Sugar Ray Robinson ’ ’, to set aside a decision of the New York State Athletic Commission, dated April 3, 1959, reading as follows: “ The Commission therefore directs that Articles of Agreement be entered into by the Champion, Sugar Ray Robinson, for the defense of his Championship Title against the challenger, Carmen Basilio, at a time and place approved by the Commission. Unless such Articles of Agreement are entered into on or before twelve o’clock noon, April 15, 1959, the Commission will vacate the title of Sugar Ray Robinson as Middleweight Champion of the World on April 15, 1959 In addition, Robinson asks that the commission be stayed from vacating his title pending the final order of the court.
Section 1285 of the Civil Practice Act, provides that the procedure under article 78 “shall not be available to review a determination * * * 3. Where it does not finally determine the rights of the parties with respect to the matter to be reveiwed.” Although Robinson’s amended petition alleges that “ the determination and decision (dated April 3, 1959) is a final decision ’ ’, it seems clear that this characterization is not correct. The so-called decision, in effect, informed Robinson that if he did not enter into a contract to defend his title against Basilio by April 15, the commission would vacate his title. There is no allegation that the commission did, in fact, vacate his title. Indeed, the court is asked to stay the commission from doing so. Until and unless the commission has actually vacated Robinson’s title, his right to keep the title has not been ‘ ‘ finally ’ ’ determined by the commission. The commission may possibly change its mind and refrain from vacating the title. The ‘ ‘ decision ’ ’ of April 3 constitutes nothing more than a statement of the commission’s intention to vacate the title. The ‘ ‘ decision ’ ’ does, it is true, direct Robinson to enter into articles of agreement with Basilio, but the commission cannot compel Robinson to comply with this direction. It can only (Rule H of the Commission’s Rules regulating Boxing and Wrestling Matches) suspend his license or vacate his title for failure to comply, and it has, up to this time, done neither. *287 Indeed, Robinson’s real grievance, as alleged in bis original petition as well as in bis amended petition, is not tbat he was directed to fight Basilio, bnt rather tbat tbe commission bas threatened to vacate bis title. Since tbe proceeding to review tbe “ decision ” tbat Robinson’s title would be vacated is premature until a final determination actually vacating his title bas been made, tbe provision of section 1299 of tbe Civil Practice Act which authorizes tbe court “ In a proceeding under this article ” (italics supplied) to grant a stay of further proceedings on the part of respondent is unavailable to Robinson; it falls with tbe proceeding.
In view, however, of the fact tbat tbe commission as well as Robinson have argued tbe merits of tbe commission’s ruling and tbat tbe commission deems it desirable, in tbe public interest, tbat an expeditious decision of tbe merits be made, the court will consider tbe merits of Robinson’s attack upon tbe commission’s ruling and will decide tbe application upon tbe merits, treating tbe decision tbat Robinson shall defend his title against Basilio as tbe final determination sought to be reviewed. Tbe commission is vested with “ tbe sole direction, management, control and jurisdiction over all * * * boxing * # * matches or exhibitions * * * held or given within tbe state of New York ” (State Athletic Commission Law, § 6; L, 1920, cb. 912, as amd. by L. 1953, cb. 137). Section 1 of said State Athletic Commission Law authorizes tbe commission to promulgate rules and regulations not inconsistent with tbe various sections of tbe statute.
Subdivision 1 of rule H of tbe rules promulgated by tbe commission (N. Y. Off. Comp, of Codes, Rules & Regulations, 8th Off. Supp., p. 543) provides tbat “ a boxer bolding a championship title must defend bis title against a suitable contender within a period of six months after winning or after last defending it, or his title may be vacated by the commission ” (italics tbe court’s). The subdivision further provides tbat “ In tbe event tbat a champion fails to so defend bis title, any boxer in tbe same class who is considered by tbe commission to be a suitable contender, may, at tbe lapse of tbe said six months, forward to tbe commission a challenge ” accompanied by a prescribed deposit. Subdivision 2 of rule H reads as follows: “ 2. Upon receipt of such challenge, tbe commission shall forward it to tbe champion and announce tbe challenge at tbe office of tbe commission. Thereafter, such champion must, within 20 days after such announcement, enter into articles of agreement to defend bis championship title against tbe contender. In tbe *288 event the champion does not enter into such articles of agreement as specified above or capriciously refuses promptly to defend his title against such contender, his license shall be suspended by the commission until he either defends his title against the challenger or against some other contender considered suitable by the commission, or until his title is otherwise vacated, unless he is prevented by circumstances beyond his control, in which case the time may be extended.”
Robinson won his title of Middleweight Champion on March 25, 1958, by defeating Carmen Basilio, who was the champion at the time the fight commenced. Since that time, Robinson has not fought at all, either in defense of his title or otherwise. On March 13, 1959, long after the six months specified in subdivision 1 of rule H had expired, Carmen Basilio forwarded a challenge to the commission, accompanied by the required deposit, and the commission announced the challenge and forwarded it to Robinson. The latter was required by subdivision 2 of rule H to enter into articles of agreement, within 20 days, to defend his title against Basilio. Instead of doing so, Robinson had his attorney write a letter to the commission, dated March 20, 1959, stating that prior to the receipt of the challenge Robinson had consummated negotiations to defend his title against one Gustav Seholz, described as “ one of the leading contenders for the world’s Middleweight Championship and the present European Middleweight Champion ’ ’. The letter stated that ‘ ‘ final contracts are being prepared and will be filed shortly with the appropriate State Athletic Commission in which the bout will take place ”. On March 20 the commission received a cable from Seholz to the effect that he had, on March 5, entered into a contract to fight Robinson “ In USA or Germany before September 1959 ”. (This statement is inconsistent with the statement of Robinson’s attorney that the contract was “being prepared”.) The commission heard nothing further about the proposed Robinson-Scholz match. On April 3 it made the decision sought to be reviewed. In its decision, the commission declared that “ Carmen Basilio is generally acknowledged as the Number One Contender for the Middleweight Championship of the World ” and that “ the Commission is of the opinion that Carmen Basilio is the suitable contender for the title * * * and Articles of Agreement should be arranged between him and Robinson for such a title bout ” (italics the court’s).
Robinson contends (1) that the commission had no authority under the statute to enact subdivisions 1 and 2 of rule H, (2) that the commission’s decision that he defend his title against Basilio or forfeit the title was arbitrary and capricious, and (3) *289 that the commission’s decision was made without according him a hearing, to which he claims he was entitled.
The contention that the commission was without authority to promulgate subdivisions 1 and 2 of rule IT is without merit. Nothing in these subdivisions is inconsistent with sections 1 to 33, inclusive (L. 1920, ch. 912), of the statute. Just as the sport of baseball requires for its success the awarding of league championships as well as world’s championships, so does the success of the sport of boxing require the awarding of world’s championship titles for different weight classes and championships for subdivisions of the world, such as countries. The existence of championship titles may safely be said to be an integral and necessary part of the sport of boxing. A. commission appointed to regulate that sport, and vested with sole jurisdiction over it, necessarily possesses authority to regulate, for the area over which it has jurisdiction, the manner in which titles shall be won, lost and vacated.. Such authority in the commission is implicit in the grant to it of exclusive jurisdiction over the sport of boxing in the State of New York.
The need for a provision that a champion may not keep his title indefinitely without fighting in its defense is particularly great. Without such a provision, a champion could refuse to fight in its defense and yet hold on to his title, thus destroying the incentive of others to improve their ability in the hope of winning a championship. The desirability that a title be vacated if the champion unduly delays fighting in its defense is evidenced by the fact that the by-laws of the National Boxing-Association, Inc., composed of the Athletic Commissions of every State of the United States, except New York, Massachusetts and Alaska, provide (§6) that any champion shall be required, within six months from the time of winning the title, to defend his title against a leading contender selected from a list established by the Ratings Committee of the Association, and shall be required to continue to defend his title within every subsequent six months ’ period ‘ ‘ against the leading contender or one of several contenders who may be so designated by the Executive Committee in concert with the Ratings Committee. For failure to defend his title as required ‘ ‘ title recognition may be withdrawn ” (italics the court’s).
Subdivision 1 of rule H expressly authorizes the commission to vacate a title if the holder thereof fails, within six months after winning the title (or successfully defending- it), to fight “ a suitable contender ”. Obviously, the choice of the person whom a champion must successfully fight to keep his title must depend on the judgment of the commission. Otherwise, a champion *290 could freeze his title in himself indefinitely by selecting inferior opponents for his defenses of that title. Except in special circumstances, the champion should logically be required to defend his title against the leading contender, if the latter desires to fight him. A successful defense of the title against some one other than a challenging leading contender does not really establish that the defender is still entitled to the title of champion, and, conversely, a defeat of the champion at the hands of some one other than the leading contender should not entitle the winner to the title, if the leading contender or contenders, though willing to take on the champion, were by-passed.
We turn to Robinson’s contention that the commission’s decision, that Carmen Basilio was the person against whom he should defend his title, was arbitrary and capricious. The official ratings of the National Boxing Association list Basilio as the leading contender. Gustav Scholz is listed in fourth place. The ratings by Nat Fleischer, the world-renowned boxing expert, likewise give first place to Basilio and fourth place to Scholz. In these circumstances, for the reasons previously mentioned, the commission’s decision that Robinson ought to defend his title against Basilio, the leading contender, who challenged him, rather than against the fourth place contender, Scholz, appears to be eminently proper and in no way arbitrary or capricious. Indeed, a contrary decision, which would permit Robinson to ignore Basilio’s challenge and defend his title against a lower-rated opponent, might well be subject to successful attack as arbitrary and unreasonable. All the members of the World Championship Committee, composed of Julius Helfand, one of the members of the New York Commission, Edward Rabret of France, and Onslow Fane of England, have indicated their concurrence with the decision of the New York Commission.
There remains for consideration Robinson’s claim that he was entitled to, but not given, a hearing prior to the decision complained of. There is no statutory provision for such a hearing in the circumstances here involved and there is likewise no provision in the rules for a hearing. Robinson relies on the recent case of Hecht v. Monoghan (307 N. Y. 461) as establishing a common-law right to a hearing.- That case, as pointed out in Matter of O’Brien v. Commissioner of Educ. (3 A D 2d 321, 325) ‘ ‘ dealt with the revocation of an occupational license; the court held the license to be a property right, of which the licensee could not be deprived without an administrative hearing of a quasi-judicial character.” In the case at bar, there was no revocation or suspension of Robinson’s license, either actual *291 or threatened. The decision did not deprive him of his right to make a living by boxing. There is grave donbt that the recognition by the commission of his championship, as far as this State was concerned, was a property right of which he could not be deprived without a hearing. It is, however, unnecessary to decide this question, for even if it be assumed that the commission’s recognition of Robinson’s title as champion was a property right which could not ordinarily be taken away without a hearing, the instant case would clearly be an exception to that rule. Robinson’s papers state no facts which were unknown to the commission or which, if presented at a hearing, could justify a different determination. Concededly, Basilio is the leading contender. Concededly, the rules give the commission the right to vacate the title of a champion who has not defended his title for over six months. Admittedly, Robinson .did not accept Basilio’s challenge. Admittedly, Scholz, whom Robinson wishes to fight, is rated fourth among the contenders for Robinson’s title. The material facts are clear and undisputed. There is nothing to be heard, as far as appears from Robinson’s papers, at the hearing to which Robinson insists he is entitled. Where there is nothing to hear, and no requirement of a hearing in any statute or rule, the court would not be justified in vacating the commission’s decision in order to direct a vain, futile and meaningless hearing. There is no point in directing an idle hearing which could serve no useful purpose.
It is to be noted that the claim made in Robinson’s original petition that the commission had no power to vacate his title in States other than New York is not stressed in the amended petition, although the amended petition does allege that the commission’s action has deprived him of- an opportunity to defend his title against Scholz and that he is no longer free to seek a match outside of the State of New York. Suffice it to state that the commission expressly concedes that it has no right or power to vacate Robinson’s title except insofar as recognition thereof in this State is concerned. It points out that other States have the right and power to decide for themselves whether or not they will vacate Robinson’s title within the limits of their own territorial areas. The decision of the New York Commission is not conclusive upon other States or jurisdictions.
There is, however, one respect in which the commission’s decision is subject to criticism. It directs Robinson to enter into articles of agreement to defend his title against Basilio “ at a time and place approved by the Commission Although subdivision 2 of rule H at one time required the champion, within *292 20 days after a challenge announced by the commission, to defend his championship- ‘ ‘ at a time and place approved by the commission”, the quoted language was omitted from the amended rule now in effect. The erroneous requirement that the articles of agreement fix a time and place for the fight with Basilio satisfactory to the commission was not Robinson’s real grievance, nor is it now. It is not even mentioned in his original petition or in his amended petition. Robinson’s position has been and is that he wants to defend his championship against Scholz, not against Basilio, and that the commission erred in requiring him to defend it against Basilio. The brief submitted on behalf of the commission states that Robinson “ was, and is, at liberty to do so (defend his title) in the State of New York or elsewhere ”. However, in view of the error above referred to in the commission’s decision, the commission’s determination is modified to the extent of directing it to give Robinson 15 days within which to enter into articles of agreement to defend his title against Basilio or else risk the vacatur of his title by the commission. The latter has the right, nevertheless, to fix a time limit within which the match against Basilio must take place. Otherwise, Robinson could prolong the retention of his title without fighting in its defense by entering into an agreement fixing a fight date in the distant future. The amendment of rule H did not affect this inherent right of the commission; the latter has no right, however, to fix the place of the match. It concedes that it does not claim the right to require the bout to take place in this State. There appears to be no justification for any claim by the commission that it may require the fight to be in any specific other State or jurisdiction.
The commission claims that subdivision 2 of rule H relates only to suspension of licenses and that the subject of vacating titles is dealt with exclusively in subdivision 1. This is by no means clear, especially since subdivision 1, after providing for the vacatur of a title, goes on to provide for challenges after the six months’ period and continues with that subject in subdivision 2. However, even if it be assumed that the commission’s claim in this respect is meritorious, its attempt to compel Robinson to defend his title in whatever other State or jurisdiction it selects, or else vacate his title, appears to be without reasonable or legal basis.
Some reference is made by Robinson to his tax problems as an excuse for his delay in defending his title. The details of these problems are not disclosed, but it would seem to be obvious that a champion’s personal tax problems cannot justify his indefinite retention of a championship title without fighting in *293 its defense, to the detriment of the general public and the sport of boxing. The sport of boxing should not suffer or perish because of the tax problems of Robinson or any other champion.
The motion is granted only to the extent indicated, and otherwise denied. Until the expiration of the 15-day period mentioned above, the commission is stayed from vacating Robinson’s title.